UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS J. RIEMER,

        Plaintiff,

v.                                           Case No. 06-C-465

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND &
HEALTH AND WELFARE FUND, et al.

        Defendants.

**DECISION AND ORDER**

Thomas Riemer "retired" at the age of 51 after some 30 years as a Teamster truck driver, and soon began driving a truck for his wife's trucking company, CLR Transport. While working for his wife, Riemer continued collecting the health and pension benefits he had accrued during his previous employment. The pension and health plans, however, contained a clause prohibiting beneficiaries from working in the trucking industry. When trustees received an anonymous tip that Riemer was still driving a truck, they investigated and suspended payment of his retirement benefits. Riemer now brings this ERISA enforcement action to challenge the suspension of benefits. He asks this court to find that he was a "volunteer" truck driver who received no compensation for his years of driving a commercial truck for his wife's company. Because he was a volunteer, he argues, he was not performing any work prohibited by the benefit plans. Thus, he believes the trustees' decision to suspend his benefits was arbitrary and capricious. The defendants (the pension and

health funds and their trustees) have moved for summary judgment and, for the reasons given herein, their motion will be granted.

## ANALYSIS

The single issue in dispute is the plan's interpretation of the term "reemployment." As defined in the relevant plan documents, "reemployment" means employment or service "of any kind and at any time which is a basis for any form of past, present or future wages, salary, commissions, profit or other income (including employment in a management or supervisory position, and including any occupation or service in which there is no employer-employee relationship.)"[1]

Riemer concedes that the defendants have the discretion to interpret their own plans, which means the arbitrary and capricious standard applies. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan. Absent special circumstances such as fraud or bad faith, the [plan administrator's] decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 812 (7th Cir. 2006) (quoting *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir.1996)). The question, then, is whether there is any reasoned basis for the plans' determination that Riemer's unpaid work for his wife's trucking company constitutes reemployment.

---

[1] The plan documents are attached to the Nelson Affidavit at Exhibits B, C, and E; the definition can be found at, for example, p. 65 of Ex. B.

2

As noted at the outset, Riemer maintains he was not reemployed because he was a volunteer driver for his wife's company. He never received any direct compensation from his wife, and any income made by his wife's company (of which she was the sole proprietor) was kept completely separate from any income Riemer received, in part by virtue of a marital property agreement. Although his volunteer driving appears to have generated substantial income for his wife's company, he states that he never saw a penny of it. In sum, Riemer's view is that he cannot have been reemployed if the income went to a person other than himself. Taken to its logical extension, he asserts, the defendants' interpretation would prevent him even from driving a truck for Goodwill or any other charity, which means the defendants' interpretation is not just arbitrary but absurd.

In truth, there is nothing absurd about the defendants' argument, and it is a something of a reach for Riemer to compare volunteer work for a bona fide charity to his own work for his wife's commercial trucking company. If a driver volunteers for Goodwill, he is not working for income but is simply donating his services to a charity. In contrast, Riemer *was* working for income, it just happened to flow to his wife rather than himself. Even if Riemer's motives were wholly charitable – say, to promote marital harmony – his work is still of a commercial nature and is generating income. There is ample support in the plan's language to accommodate an interpretation of reemployment that includes any income-generating work: the plan documents define reemployment as work that is "a basis for *any form* of . . . profit or other income." The language thus does not make the central distinction that Riemer now advances, which is that prohibited reemployment exists only if the income generated flows directly to the employee. Accordingly, the defendants' construction of the reemployment provision is a reasonable one.

3

Moreover, even if the reemployment provision would not apply if Riemer truly received *no* financial benefit from his work (supposing his earnings were sent directly to Goodwill), the defendants were entitled to conclude that income Riemer generated for his spouse conferred a benefit on him. Regardless of whether any marital property agreement existed or whether the beneficiaries took other steps to isolate income, there are innumerable ways in which Riemer may have been compensated. Indeed, it is not difficult to imagine how profit to one's spouse could constitute "any form" of income under the plan's language. In fact, in the context of a marriage, in which two individuals presumably share all expenses and live under the same roof (there is no evidence to the contrary here), it would be nearly impossible to place a sort of Chinese wall between one spouse's finances and the other's. Although a marital property agreement might have impacted the distribution of the marital assets in the event of a death or divorce, for example, that has little bearing on whether the plaintiff may have derived any economic benefit from the enrichment of his wife during the period at issue here. It would thus not be unreasonable for the defendants to conclude that any employment that generates income for the beneficiary's spouse is prohibited reemployment.

Accordingly, I conclude that the defendants' interpretation of reemployment is a reasonable one. Under the arbitrary and capricious standard, the defendants must merely demonstrate a reasoned interpretation that fits with the evidence in the case. "Under the arbitrary and capricious standard, [the court] will overturn a plan administrator's decision 'only . . . if it is downright unreasonable.'" *Herman v. Central States, Southeast and Southwest Areas Pension Fund,* 423 F.3d 684, 692 (7th Cir. 2005) (quoting *Carr v. Gates Health Care Plan,* 195 F.3d 292, 294 (7th Cir.1999)). For the reasons given above, I cannot conclude that it was "downright unreasonable"

4

for the plans to determine that beneficiaries cannot be engaged in any income-generating activity in the trucking industry.[2]  Therefore, the motion for summary judgment is **GRANTED**, and the case is **DISMISSED**.

**SO ORDERED** this 28th day of September, 2006.

                                                      s/ William C. Griesbach
                                                      William C. Griesbach
                                                      United States District Judge

---

[2]An additional element of the plans' argument seems to be that they simply do not want (or lack the resources) to get involved in parsing familial relationships and inspecting marital property agreements.  Practically speaking, allowing Riemer to evade the plans' reemployment prohibitions would create an enormous loophole that would be nearly impossible for the plans to police.  Seen in this light, the position that "any income" includes income to spouses is eminently reasonable, as it would head off the sorts of legalistic attempts to circumvent the reemployment provision at issue here and would obviate the need to engage the court system to sort through whatever income-shifting vehicles the beneficiary may have used.

5